AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi

FILED
SOUTHERN DISTRICT OF MISSISSIPPI
AUG 16 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>Jerome Clegg<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:23-mj- 101-BWR<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 14, 2023__ in the county of __Jackson__ in the
__Southern__ District of __MS, Southern Division__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances, |

This criminal complaint is based on these facts:
See affidavit attached hereto and incorporated herein

☑ Continued on the attached sheet.

_____
Complainant's signature

Alexander W. Smith, Task Force Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __8/16/2023__

_____
Judge's signature

City and state: __Gulfport, Mississippi__          Bradley W. Rath, United State Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your Affiant, Alexander W. Smith, being duly sworn, deposes and states the following:

1.  I am a Police Officer with the Pascagoula Police Department, assigned to the United States Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) since August of 2018. I have served as a sworn law enforcement officer in the State of Mississippi for over seven (7) years. I graduated from the Harrison County Law Enforcement Training Academy in 2016 and have since received extensive training in relation to the investigation of illegal drug trafficking by virtue of my employment with the Pascagoula Police Department and assignment with DEA. My training has included narcotics investigations, hotel, motel, and parcel interdiction, drug search warrants, financial investigations related to drug trafficking, money laundering, asset forfeiture and seizure, and social media analysis. I have participated in and conducted multiple investigations which have led to the arrest and conviction of individuals who have been involved in the smuggling, receiving, and distribution of controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs. In addition, I have conducted, in connection with these and other cases, investigations concerning the concealment of narcotics-produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, and photographs, as related to drug trafficking. I have been involved in various types of electronic surveillance, in the execution of search warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking. I have been involved in multiple investigations relating to the distribution of synthetic cannabinoids in various forms.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## Probable Cause

3. Between 2021 and the present date, agents with the United States Drug Enforcement Administration (DEA) and the South Mississippi Metro Enforcement Team (SMMET) received intelligence via a variety of sources including a tip received via the Mississippi Coast Crime Stopper, that a subject identified as **Jerome CLEGG** was distributing large quantities of crystal methamphetamine ("ICE") in Pascagoula, MS.

4. On August 14, 2023, agents with DEA and SMMET established physical surveillance of Cotita Apartments, located at 1402 Telephone Road, Pascagoula, MS. Per intelligence obtained from SMMET, CLEGG was reported to be living in apartment #30 and owned a gold colored truck. During surveillance, agents observed a vehicle matching this description parked in front of apartment #30.

5. At approximately 1500 hours, agents observed a white GMC Yukon, MS tag # STB3612, arrive in the parking lot of Cotita Apartments and park in the middle of the lot close to apartment #30. Agents observed a tall white male subject, later identified as C.L., exit the driver door of the vehicle and enter apartment #30. Over a period of approximately 45 minutes, agents observed C.L. exit apartment #30 and return to his vehicle at least once. At approximately 1545 hours, agents observed C.L. exit apartment #30, closing the door behind him, and enter his vehicle. C.L. then departed the location and headed towards Telephone Road under surveillance by agents. At approximately 1554 hours, SMMET Agent James Prisock observed the vehicle driving on

Telephone Road near Catalpa Avenue. Agent Prisock observed the license plate to have an expiration date of 02/23. Agent Prisock observed that the front driver/passenger windows appeared to be improperly tinted as well. Agent Prisock conducted a traffic stop on the vehicle on Telephone Road just west of 14th Street with the assistance of DEA Task Force Officer (TFO) Alexander Smith.

6. Agent Prisock approached the vehicle and made contact with the driver, C.L., and front passenger, C.D. Agent Prisock noted that C.L. appeared to be nervous and was talking very quickly and did not ask the reason for the traffic stop. C.L. advised the vehicle belonged to a friend and stated he was in Pascagoula to purchase tires. Agent Prisock obtained the identification for C.L. and C.D. and ran them through the Pascagoula PD dispatch. C.L. was determined to have a suspended driver's license. TFO Smith spoke with C.D. and asked him where he and C.L. were coming from. C.D. advised they were coming from Gulfport, MS and going to a tire shop in Pascagoula, MS. Neither C.D. nor C.L. made any mention of stopping at an apartment after arriving in Pascagoula, MS. The statements provided by C.L. and C.D. appeared to TFO Smith to be indicative of deception and knowledge of involvement in illicit activity.

7. Agent Prisock asked C.L. to exit the vehicle and spoke with him separately from the vehicle and from C.D. Agent Prisock asked C.L. for consent to search the vehicle and C.L. gave Agent Prisock verbal consent to search the vehicle. PPD Officer Michael Davis # 118 arrived on scene and assisted Agent Prisock in searching the vehicle. TFO Smith requested that C.D. exit the vehicle and waited with them while Agent Prisock and Officer Davis searched the vehicle. During the search, Officer Davis located two clear bags containing a clear crystalline substance concealed behind a plastic panel under the front portion of the center console. Based on the appearance and weight of the substance, agents believed it to be crystal methamphetamine ("ICE").

This was later confirmed via a methamphetamine reagent test kit which indicated a positive result. The total gross weight of this substance was 58 grams. C.L. and C.D. were taken into custody by Officer Davis and transported to the Jackson County ADC.

8. At approximately 1600 hours, agents conducting surveillance observed a 1993 Ford F-150, park in the parking lot of Cotita Apartments. Agents observed the driver, later identified as J.B., exit his vehicle and enter apartment #30. A short time later, J.B. exited apartment #30 and returned to his vehicle.

9. SMMET Agent Ted Gilbert and SMMET Agent William Anderson followed the vehicle and observed that the license plate on the vehicle was displayed as expired in June 2023. Additionally, agents observed that the vehicle made an improper turn from Telephone Road onto Highway 90 into the middle lane. Agents Gilbert and Anderson conducted a traffic stop on the vehicle on Highway 90 west of the Pascagoula bridge. Agents made contact with the driver, J.B. J.B. had, in his hand, approximately three (3) grams of suspected crystal methamphetamine ("ICE") upon contact. J.B. stated he had picked up the methamphetamine in the parking lot of Walgreens after picking up a prescription. J.B. was taken into custody and transported to the Jackson County ADC.

10. At approximately 1800 hours, agents observed a white female, later identified as L.C., enter the parking lot in a black BMW car. Agents observed the license plate was registered to Johny Clegg, later identified as the father of Jerome CLEGG. Agents observed the vehicle park behind the gold truck parked in front of apartment #30. Agents observed L.C. exit the vehicle with a small child later identified as the daughter of Jerome CLEGG. Agents observed L.C. enter apartment #30 and go between apartment #30 and apartment #41 multiple times.

11. TFO Smith later conducted open source social media checks for L.C. and located her Facebook.com social media account in the name of "L.C." On L.C.'s social media profile, TFO Smith located photographs of L.C. and CLEGG together as well as photographs of L.C. and CLEGG's child (unnamed).

12. At approximately 1830 hours, TFO Smith submitted for and received a state search warrant for 1402 Telephone Road, Apartment #30, Pascagoula, MS, as signed by Jackson County Court Judge Mark Watts.

13. At approximately 2000 hours, agents with SMMET and TFO Smith executed a search warrant on apartment #30. During the search warrant, agents located A.Z. inside the kitchen/living room of the apartment along with the approximately 7-8 year-old daughter (unnamed) of Jerome CLEGG. Agents continued to clear the structure and located Jerome CLEGG in the bedroom of the residence. He was sweating profusely and was walking from the direction of the bathroom attached to the bedroom. Agents secured CLEGG and then searched the bathroom. Agents located and removed a large quantity of crystal methamphetamine from the toilet which CLEGG appeared to have been attempting to flush and destroy. The shards of the methamphetamine were large enough that they appeared to have prevented the narcotics from being flushed by CLEGG.

14. During the remaining search of the structure, agents located additional methamphetamine in multiple locations including approximately one (1) ounce packaged for apparent sale, pills of unknown origin, a small money counter, multiple digital scales, labelled bands for cash, a drug ledger, and assorted paraphernalia for methamphetamine use. Agents additionally observed a gun safe attached to the wall in the kitchen, and multiple safes in the bedroom as well. Inside a medium-sized safe in the bedroom agents located a .22 caliber Derringer

handgun S/N # E157128 with five (5) rounds loaded in the cylinder. Agents located a loaded magazine for a Walther .40 caliber handgun as well as a loaded magazine for a 12-gauge magazine-fed shotgun, and several hundred rounds of various calibers in a large tray. Finally, agents located a large television in the living room of the residence that was connected to a camera overlooking the parking lot.

15. Agents arrested CLEGG for felony possession of a controlled substance, Schedule II. He was transported to the Jackson County ADC pending the issuance of a bond and initial appearance.

16. Following the search warrants, agents obtained the gross weight for the suspected methamphetamine seized from CLEGG's apartment as well as the traffic stops. The combined weight was approximately 324 grams, which included approximately 263 grams recovered from the apartment and 61 grams recovered from two traffic stops. The substance was identified as methamphetamine via two methamphetamine reagent test kits which were utilized on the substance seized from the traffic stops and one of the quantities of substance seized from CLEGG's apartment.

17. TFO Smith reviewed the suspected drug ledger seized from the apartment. TFO Smith noted the ledger included multiple names with numbers next to the names which were consistent with dollar amounts commonly seen in small and large-scale methamphetamine distribution, e.g., "Bryce 70" and "Kyle 200." The largest identified dollar amount listed was "1000." The total dollar amount combined over several pages of the ledger was $2,390.00. TFO Smith is aware that methamphetamine is generally re-sold at double the cost of purchase. $2,400 to $3,000 is known to be an average price for one (1) pound of crystal methamphetamine when purchased in pounds. Therefore, $2,390.00 worth of methamphetamine would generally equate to

a total of one-half pound (226 grams) of methamphetamine purchased and resold by CLEGG to individual purchasers.

## Conclusion

18. Based on the above facts and circumstances, TFO Smith believes that there is probable cause that **Jerome CLEGG** was actively involved in the large-scale distribution of crystal methamphetamine from his apartment located at 1402 Telephone Road #30, Pascagoula, MS, and that on August 14, 2023, CLEGG did knowingly and intentionally possess with the intent to distribute approximately 263 grams of crystal methamphetamine (apartment) and did knowingly and intentionally distribute an additional approximately 61 grams of methamphetamine (traffic stops), in violation of Title 21 of the United States Code, Section 841(a)(1).

_____
Alexander W. Smith
Task Force Agent, US Department of Justice
Drug Enforcement Administration

Sworn and subscribed before me this __16th__ day of August 2023.

_____
Bradley W. Rath
United States Magistrate Judge